Mr. Roberts, I'm happy to have you here. Thank you. That pleases the court. We don't have $30 million at stake, but we do have what I think is a rather important labor management issue. The issue before this court concerns review of a decision of a joint labor management grievance panel reinstating a school bus driver who admittedly used a cell phone while operating a school bus, an offense for which the collective bargaining agreement specifically provided that Durham had the right, in the words of the union president, to fire the very first time. What we contend is that the panel did not decide the issue that was submitted. It did not do the job with which it was charged. Rather, it decided an unsubmitted issue of whether the employee was actually discharged. It ignored the plain language of the collective bargaining agreement and disregarded its own bylaws. So where I would start, I guess, is with the issue of what was at issue in the hearing. The real issue that was presented, and it's the, you know, an arbitrator and joint grievance panels function similarly to an arbitrator, are bound not only by the collective bargaining agreement, but by the scope of the issue presented. In this case, the grievance specifically contended that Ms. Alston was terminated without just cause and then the vehicle by which that reached the Piedmont Grievance Committee was a submission form by the union. And again, it conceded that she was terminated, but alleged that it was without just cause. It was then put on the agenda of the PGC and listed as a termination issue. When you get to the hearing, the company representative presented testimony, showed a videotape of the employee driving the school bus with the cell phone, presented testimony about the termination and the reasons for it. You said that this was, that they acted in violation of the collective bargaining agreement. The other side contends that Article 20, Section 1, requires a discharge letter from the school services. Yeah, that was not an argument made in the district court, and not anything that was considered by the panel. There was no contention that the employee Did the collective bargaining agreement require the issuance of a discharge letter? And a discharge letter was issued and was received and there was no dispute as to that fact. That was not the point of order. All right, but if the collective bargaining agreement requires the issuance of a discharge letter, is it not fair for the Grievance Committee to want that as part of the record? Well, they could certainly have a rule to that effect. In fact, there were, and what we agreed was that these hearings would be in accordance with the rules of the PGC. If the PGC wants to have a rule to that effect, even though it's not contested, they could have that. But the point is, is that's not in the rules. There's nothing that suggests that. And there was They say that the part that suggests it is the part in the bylaws that say that the panel's decision will be based only on the facts presented by the parties. So they read that rule as saying, you've got to get that discharge letter in with your papers. Why is that unreasonable? Well, even if it is, it was offered immediately at the point that the point of order was raised. There was no this If you look at how these cases were handled in the past, there was a case with Durham in the past where that issue, where the issue of whether that discharge letter had been presented, and in that case, the point of order was raised in advance so that you know that there's no surprise at the hearing. And in that case, there was extensive questioning about whether they presented the letter, whether it was or was not. Here, they basically said, well, you didn't put it in your case in chief. So now it's too late. Gotcha. You can't. And even when she offered it up immediately with no delay in the hearing or anything, they refused to accept it. I think that's that's an abuse of discretion to the extent that they had discretion to make it. If you were arguing a decision from a district court along the same lines, that would probably have some degree of effectiveness. But you know, when you get into arbitration, even if something happens here which is a bit slick, it would appear on the surface. We cut the arbitrators an incredible amount of slack. That's just part of what arbitration is. And there's a pretty heavy body of case law and public policy for decades that says that the arbitrators have really got to get outside the lines before a court will intervene. Well, I don't. I certainly . . . It's just one of the penalties for having the privilege of arbitration. Certainly the courts grant considerable scope to arbitrators and grievance panels. We're not disputing that. But there are lines that are crossed, that can be crossed. And they have to . . . When you specify the rules, and the courts have said that . . . To follow up on what my good colleague said, not only are the rules of arbitration, I mean the standard of review of arbitration among the narrowest known to law, labor arbitration in particular requires maybe an even narrower standard of review. It's essential to industrial peace. And in many collective bargaining agreements, unions give up a right to strike in return for arbitration and the fact that the courts will respect it. And we start undermining these kind of things. It just leads to all kinds of mischief. I understand that, Your Honor. But there are lines. And the cases, even in this circuit, recognize that there are lines that can be crossed and arbitrators, even though they have wide discretion, their limits . . . I mean, their powers are not limitless. I mean, in this case, we are . . . It's kind of a procedural matter. Isn't that right at the heart of what the Supreme Court said in as to what should or should not be required as a matter of a record? Now, it doesn't seem to me that the arbitrators jumped off the rails when they wanted as a part of the record in the case a written discharge letter. That would seem to me to be a perfectly reasonable thing to request because in order to decide whether the district had just cause to terminate this individual, you would need a discharge letter which set forth the cause. So, it's highly relevant. But if you assume that and accept that, then there was certainly no harm in presenting it. I mean, you know, they offered the letter immediately. And if it was indispensable, there's nothing in the rules that suggests that that was required. You said you were supposed to present it, but you didn't. No. There was a previous proceeding in which I think you had neglected to present it. No, no, no. The issue in the previous situation was that the contention was there was no copy given to the union at the time of the determination. That's a contractual issue. Here there was no dispute. And I'd like to address your issue about the procedural issue. I know this court has a . . . I have a Supreme Court decision called House . . . Yeah, I'm familiar with it, Judge, and I know that this court . . . Well, I know you're familiar with it, but it's highly pertinent here. If we start reviewing this procedural ruling and this evidentiary ruling, this is a run-of-the-mill, grist-of-the-mill evidentiary ruling. And if we start reviewing that under an abusive discretion standard that it obtains when we review district court judgments, we're going to be flooded with appeals. We're going to be overwhelmed. I'd like to respond just briefly, if I could, on House. I mean, I know this court has a recent decision in UBS Financial in which there was an issue of a procedural issue. But I'd like to draw a distinction between Howsam and UBS in this case is that in those cases they were talking about gateway issues, procedural issues in getting to arbitration. In your UBS Financial case, I know that the issue had to do with the selection process of arbitrators. Here we're not talking about a gateway issue. We're talking about . . . Mr. Harris and I were on that panel. I did not make a distinction between . . . we talked about evidentiary rulings generally. I understand. We didn't want all kinds of evidentiary rulings under . . . that it would be a violation of Howsam to take over the arbitrator's ability to run the procedures and to particularly just run-of-the-mill evidentiary calls. Well, I understand what you're saying, but I think there are distinctions. Maybe you didn't draw them in there, but I think Howsam is that kind of gateway case, and I think that so was UBS. And I don't think that the PGC should . . . can make up ad hoc rules. I mean, basically what they were doing, the rules are supposed to be . . . this is a joint panel where they vote on the rules, and rules where they're supposed to be amended require a 30-day's notice and a vote on whether to approve those or not, and so none of that was followed . . . Wasn't there evidence . . . I'm sorry? Wasn't there evidence in the district court from at least one panel member and another witness who sat on other panels that this issue had arisen before, they had ruled similarly in one case, I think, against the union, and they felt that their consistency or own internal common law, for lack of a better word, required them to be consistent in this case with what they had done in other cases? There was one panel member who testified that . . . to that effect, and you know, but the Durham wasn't a party to those two decisions. They were . . . as I say, the rules . . . we bargain to have the hearing conducted in accordance with the written rules of the Piedmont Grievance Committee, and that's one of the basic thrusts of our argument is that they weren't conducted in accordance with . . . Is there a provision of the rules that you would point to and say what happened was inconsistent with what's written down there? Yes, in Article 7, I don't remember the specific subparagraphs, but there's Article 7 of the Grievances hearings, and they talk about that either . . . parties can present whatever evidence they want, bearing on an issue, that the panel will consider that evidence and will after hearing both . . . But all of that happened here. The parties were allowed to present evidence in their case-in-chief. Well, they didn't . . . they heard our evidence, but then they refused to consider it in much the same way as in Marabone, where they . . . Well, I guess I do see what you're saying, that nowhere in here does it say expressly be sure to put in the written termination letter in your case-in-chief. It doesn't say that, but I'm not seeing anything that says you don't have to, and I'm not seeing anything that says, and if you forget to put something in, we'll let you put it in if there's no prejudice or surprise to the other party, which might be a very reasonable rule to have, but it's not written down here. No, but I mean, I don't think the rules . . . the fact that it doesn't say anything, it could . . . I mean, it doesn't say you . . . No, but that is a big problem if it doesn't say anything. Well, I mean . . . Then you just have to interpret what's here, and that becomes an interpretive question. Well, I don't think there was any interpretation of the rules. They just followed . . . Why wouldn't you put this in? You would seem to want the reason for what you did to be non-arbitrary. I mean, that, to me, it would be the first thing I would think of if I were making a case in chief. Here's the discharge letter. Here's why we discharged. I understand, and I would agree that perhaps that was obviously a mistake. It obviously was a mistake in retrospect that was made by the representative in not putting it in, but my argument is . . . and I'm running out of time. I'd like to save a couple of minutes for rebuttal, but my argument is that the rules . . . nothing in the rules supports this interpretation. It basically was the fact that . . . and the fact that they said that the point of order was that if there was no discharge letter, she wasn't discharged. It wasn't that there was a contractual violation. The point of order was that that meant that there was no discharge. That wasn't the issue for the Piedmont Grievance Committee. I mean, we might construct reasons that they could reach this result, but the result they reached was a conclusion that she was not terminated. On the merits, I don't want to go into the merits, because I don't think that's beyond it, but you're not . . . this is not a slam-dunk case. I mean, this individual had no prior disciplinary record. It was an empty bus. It was responding to a parent's concern about pickup time of a child. You know, if it were a real bad actor or something, I could understand, but, you know, it is true that there were a good number of mitigating circumstances. Now, whether the arbitrators wanted to avoid gutting your rule with a ruling on the merits, I don't know, but it seems perfectly reasonable for you to set forth, here's what we did. Here's why we did it. We set it out. I mean, companies keep meticulous records on things like this. You know, they have human resources departments, and they're all developed. You know, the one thing the human resources departments do is they keep records, and the one thing lawyers do is they submit records before the arbitral body. I just . . . I don't understand it. It seems to me a very hard-to-understand oversight. I just . . . I can't imagine anything more basic, and the fact that it isn't submitted, I don't understand why you would be . . . why we would overturn an arbitration on the basis of a participant's evident oversight. I'm going to run out of time, but if I could quickly respond to that is that, again, I go back to the point I've made is that we judged . . . I believe the court should judge the panel or the grievance panel on the decision it made, and the decision it made was based solely on a point of order that the failure to produce the discharge letter meant that she wasn't discharged, and I don't think that was the issue that was submitted. I don't think . . . if they wanted to reach the just cause issue that you pointed out, Judge Wilkinson, I mean, they could have heard from her and then made that kind of evaluation, but they didn't do that, and I just think that this is inconsistent with . . . I don't think evidentiary rules have to say, oh, and you must submit item A, item B, item C, item D. The federal rules of evidence don't read that way, and the . . . I don't . . . most general evidentiary rules don't get into the kind of detail that say you must submit items A, B, and C. They leave a lot of that to counsel. That's what lawyers do. They exercise judgment, specific judgment, case-specific judgment under general rules, and that's the scheme. I understand that, Your Honor, but I just think that in this case, if you look at what they did on the face of what they did, they essentially decided that she was not terminated, which was not an issue that was submitted to them. Whether they could have justified it under some other analysis, I mean, we just don't think that they did, so I've run out of time. Thank you. We thank you, and we'll hear from Mr. Axelrod. May it please the Court. I'm tempted to say I should quit while I'm ahead, but I have a few things I'd like to put before you. This case was submitted to the Piedmont Grievance Committee. We won't hold it against you if you choose otherwise. Thank you, Your Honor. It was submitted on an issue of whether there was an unjust termination. There are four components of an unjust termination. Three of them are in Article 20, Section 1, progressive discipline, a list of offenses, and a written letter, written discharge notice. The fourth component is the arbitrator's inherent power to find that there was a violation, a misconduct, but that the penalty was too severe, and that was the issue that the union intended to address. The panel's co-chair, Mr. Huvaras, testified that in 19 percent of the cases, the panel found that discharge was an inappropriate remedy for misconduct and lessened the remedy. That was the direction the union intended to go. Unlike the first Durham case where there was no letter, and the union knew that in advance, the union couldn't say, we're going to raise a point of order, because they didn't know that there would be a point of order appropriate, and the union didn't know there would be a point of order appropriate until Durham's counsel completed her case in chief. And then, instead of presenting the argument that the union was going to make, the union raised the point of order. And the point of order was, in prior cases, the panel said the discharged letter is a moving document. It has to be presented. If you don't present the moving document, the company loses. And the issue the company loses is whether there was a just termination, and so the panel said there wasn't one. So it's sort of like if you were trying the case in district court, to prove your cause of action, you have to make out a promulgation case. And if you don't put on any evidence as to one element of your promulgation case, then you're subject to dismissal. Absolutely. And that's what happened here. It happened before. And it happened, one of the women that it happened before, too, was in the audience. And she said, as I watched the case, I knew this was going to happen. I saw the train wreck coming. They came to me afterwards and said we had to follow precedent. And she said, well, I wish you didn't. But the panel was following precedent, and they had the right to do that. But in terms of notice, I mean, the prior decisions didn't result in any published decision, right? I mean, would a new litigant understand that that's the rule? One of the things that the district court judge accepted was a testimony of Ms. King, who said she was told this was a participatory committee. And what that means is the panel members are the union representatives who appear there and the employer representatives who appear there. And it's designed so that those representatives come and sit on panels, present cases, watch other cases. If a company chooses not to do that, which is what happened with Durham, they only came when they had a case to present. And so the people from Durham didn't know what was going on. So the idea is that to get notice of the committee's rules, you need to just send someone. You have to be there. You need to be there even if you don't have a case. It's not just so that you know what the rules are. It's that so you help the committee decide cases. Because everyone who comes, each representative from a company or a union has a chance to sit on these panels. So it's not like they're observers in a courtroom. They are the panel. And that's how they learn how the panels operate. And they're not required to issue decisions because the Supreme Court said you don't have to issue a decision. And so if they issued a decision that said, and some panels issue minutes that say case presented, union wins, point of order wins, but they don't give reasons for why any of this happens. And the way you get the reasons is by participating in the panel. The other thing I would say is, and I told this, I said this at the district court hearing, there are lots of district court opinions that are not reported. And people know about those because they participate. And the district court cited the Teamsters Local 592 case, which said the Piedmont Grievance Committee is an arbitration body. And it cited that because I knew about it. It's not a reported case. There are some cases you just have to know about. And that's what happened here. Can I ask you just one other question that's related to the concern about notice? It's a doctrinal question. As you understand it, if we find that the, hypothetically, that the rule that the committee enforced here does derive its essence, it is grounded in the collective bargaining agreement and the bylaws, is it a separate question whether Durham was given a fundamentally fair hearing, or is that all the same question? Do you know what I'm saying? Are those two questions or not? I think it's all the same question. If the committee had the right to make the decision that it did, it was a fair hearing. And the committee did have the right because the panel says you decide case, I mean, sorry, the bylaws say you decide cases on the facts presented. This wasn't the fact presented. And the union didn't have to present the rest of combination of the contract which says you need to have a written discharge letter and the panel regulations that say the panel has to decide the case on the facts presented and not the facts that weren't presented. I mean, it's a lot of things everybody knows, but they're not in evidence if they're not presented as evidence. And that's what happened here. And do you have anything? I think I've said all I think I need to say. Thank you very much. Thank you, sir. Mr. Robbie. I have one minute to just quickly respond. Oh, I do have time. I'd like to respond, Judge Harris, to your question. I think it is two separate issues because the Supreme Court has said that in the absence of, it says the parties if they want to, they can specify the rules of procedure. If they don't specify the rules of procedure, then it becomes a bad faith misconduct issue. So there's really two different grounds on which a procedural or a procedural impediment could be raised. In this case, we had specific rules. So one issue is did they comply with the rules of procedure? A second issue would be even if they did comply, or at least even if they didn't not comply, is their ruling so gross or so bad faith as to be misconduct? And we would argue that the refusal to accept the letter, if it was in fact indispensable, you know, at the time that it was immediately offered, which would not have resulted in any delay of the proceedings, would not have caused any harm to anyone, particularly since it's not spelled out in the rules of procedure. It's not something that they had noticed. The whole issue of notice, the Piedmont Grievance Committee meets every month. I mean, an employer would have to come down every month. And a lot of these employers are in, their representatives in this case are in Chicago. I mean... But rules of evidence don't itemize particular items of evidence. They don't set forth items of evidence that must be, I mean, it's possible to write, and in fact, grievance committees like this and arbitral bodies all the And as a result, both the standard on the merits and also the evidentiary rules are often written in general terms. But it doesn't seem to me that that absolves you of the obligation to put into the record the one document that sets forth definitively the very basis of your decision and the document on which the issue will turn. Well, Your Honor, I understand what you're saying, and obviously it was a mistake, but the rules specifically say you can present testimony, you can present any testimony or evidence you want. Evidence, a prima facie case doesn't have to be established by documents. I mean, a prima facie case can be established by testimony, and there was testimony about the termination and the reasons for it, and there was no dispute as to compliance with the notice. I mean, I don't think it's a failure to establish a prima facie case. I think, again, you've got to come back to what the Supreme Court is trying to indicate to us, and that is that under the Howsam decision, which is just fundamental to arbitration law, the arbitral body gets to apply rules and evidentiary rules in the course of the proceeding. They do that kind of thing all the time. I mean, we're just cutting the ground out from arbitration if we start getting into application of procedural rules and evidentiary rulings during the course of an arbitral proceeding. There are appeals by the thousands that can be generated. I understand, Your Honor. I understand your concerns and respect those. I would just say that there are decisions in this Court, the Marabone decision, which decites to the First Circuit decision in Hotel Condado, I can't pronounce it, Condado, and the issues in those two cases were that was the, you know, even though evidence was presented on a topic, the arbitrator wouldn't consider it. I mean, and that's essentially what they did here, is even though we presented testimony and evidence that showed the grounds for it, they refused to consider any of that because the magic document was missing, even though it was offered and wouldn't be accepted. In fairness, we impose a lot of pretty tough procedural default rules and things like that, even outside arbitration. It's not unheard of that if you mess up, you don't get a second chance. Yes, and I think the standard, though, you know, is one where you look at all the factors, is, you know, is there harm, you know, to the other side? Is there delay in the proceedings? Is this giving undue weight to . . . You're trying to slide us into an abuse of discretion review. As Judge Agee pointed out at the beginning of it, that we review district court rulings for abuse of discretion. We don't review arbitral rulings for abuse of discretion or clearly erroneous fact-finding or whatever because that would just set up district courts and ourselves as another court of appeals, which is the one thing the Supreme Court did not wish to happen. And you keep talking about, well, this was arbitrary and everything. That's the same argument that people make when they say a district court abused its discretion on an court. And I understand that. I'm saying that my argument is that it was inconsistent with the rules and it was bad faith not to accept it when it was offered. I appreciate it. Thank you. We thank you. We'll come down to recounsel and take a brief recess.
judges: J. Harvie Wilkinson III, G. Steven Agee, Pamela A. Harris